1   WO

2

3

4

5               IN THE UNITED STATES DISTRICT COURT

6               FOR THE DISTRICT OF ARIZONA

7
    ROBERT D. SMITH,                    )
8                                       )
            Plaintiff,                  )
9                                       )
            v.                          )   CIV 04-02013 PHX MEA
10                                      )
    CIVIL SERVICE EMPLOYEES             )   MEMORANDUM AND ORDER
11  INSURANCE COMPANY, a foreign        )
    corporation,                        )
12                                      )
            Defendant.                  )
13  _____)

14          All of the parties have consented to the exercise of

15  magistrate judge jurisdiction over this case, including the

16  entry of final judgment.  Before the Court is Plaintiff's Motion

17  to Compel Appraisal and Plaintiff's Motion for Order Appointing

18  Appraiser for Defendant.

19                          **Background**

20          Plaintiff and Defendant entered into a contract for the

21  provision of homeowners insurance for a home in Mesa, Arizona,

22  owned by Plaintiff, which home Plaintiff leased to a third

23  party.[1]  On or about June 22, 2002, Plaintiff became aware of

24  damage to the property and, on or about August 5, 2002,

25  Plaintiff submitted a claim to Defendant for covered damages

26

27  _____

28          [1] Throughout the complaint, Plaintiff alleges that the site of
    the insured loss was his "residence."   However, Plaintiff also
    provided Defendant with a lease agreement between Plaintiff and a
    third party for the use of this property and the record reflects that
    Plaintiff resides in Scottsdale, Arizona.

pursuant to the insurance policy.

On August 30, 2002, Defendant tendered to Plaintiff the amount of $8,123.05, representing the depreciated value of the estimated $15,873.00 in necessary repairs to the insured home, as "settlement of your loss at Actual Cash Value."   See Plaintiff's Motion to Compel (Docket No. 32), Exh. 1.  Plaintiff objected to the amount of the settlement tendered by Defendant, asserting that he was entitled to additional monies pursuant to his policy and the amount of damage to the insured property. Id., Attach.

Approximately seven months later, in April or May of 2003, Plaintiff obtained the services of a Public Adjuster to represent him regarding his claim pursuant to his insurance policy with Defendant.   Id., Attach. (Affidavit of James F. O'Toole).  In late May of 2003, the Public Adjuster informed Defendant's representative that the adjuster would be preparing an estimate of Plaintiff's claim for additional benefits for the damage to his property pursuant to the insurance policy.  Id., Attach.  On or about May 28, 2003, Plaintiff's Public Adjuster submitted a "building estimate" with regard to the alleged damage to the insured property, estimating that repairing the damage to the property would cost approximately $59,868.74, exclusive of overhead, profit, and sales tax.  Id., Exh. 14.

On July 7, 2003, Defendant mailed a "Reservations of Rights" letter to Plaintiff and the Public Adjuster, stating that Defendant was neither accepting or rejecting Plaintiff's claim, and "reserving our right to deny coverage at a later date should our investigation determine that the loss does not fall

within the scope of coverage provided by [Plaintiff's] homeowner policy." Id., Exh. 13.

The insurance contract between Plaintiff and Defendant provides, *inter alia*:

> If you and we fail to agree on the amount of loss, either can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state of the Described Location to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

Id., Exh. 3.

Approximately three months after receiving Defendant's notification that they were not accepting nor rejecting Plaintiff's claim for additional benefits, in October 30, 2003, the Public Adjuster informed Defendant's representative that Plaintiff was "hereby demanding appraisal with regards to the above referenced insurance claim" and named an appraiser to represent Plaintiff. Id., Exh. 4. Defendant took Plaintiff's statement regarding the loss to his property in an Examination Under Oath on January 14, 2004. Id., Exh. 12.

1    Defendant did not name an appraiser in response to

2 Plaintiff's invocation of the appraisal clause of the insurance

3 contract.  Approximately ten months after Plaintiff invoked the

4 appraisal clause, Plaintiff filed suit against Defendant in the

5 Maricopa County Superior Court on August 24, 2004, asserting a

6 cause of action in tort pursuant to Defendant's alleged bad

7 faith in failing to resolve Plaintiff's claim for insurance

8 coverage (Count I), and a cause of action based on Defendant's

9 alleged breach of the insurance contract between the parties

10 (Count II).

11    The complaint alleges that "Plaintiff has incurred

12 substantial special and general damages and is, upon information

13 and belief, still owed payment under the terms of the contract."

14 Complaint (Docket No. 1), Attach.  The complaint seeks

15 "compensatory damages for the claimed benefits, owing under the

16 subject insurance policy, damages for loss of use of benefits,

17 and other contract and tort general and special damages," and

18 "compensatory damages for mental and emotional distress,

19 discomfort, loss of time, anxiety and other incidental damages,"

20 in addition to punitive damages, pre-judgment interest,

21 attorneys' fees, and costs.  Id.

22    On September 24, 2004, Defendant removed Plaintiff's

23 suit from state court to federal court, alleging federal

24 jurisdiction over the matter based on diversity of citizenship[2]

25 and asserting that the amount in controversy exceeds the

26

27 _____

28    [2] Plaintiff is a citizen of the state of Arizona and Defendant
is a California corporation licensed to conduct business in Arizona.

statutory minimum to invoke federal diversity jurisdiction.[3]  See Docket No. 1.

The parties have engaged in discovery, including disclosure of expert witnesses, interrogatories, and requests for admission.   Pursuant to the amended scheduling order governing this matter, discovery in this matter must be completed by October 30, 2005 and dispositive motions must be filed on or before November 15, 2005.

**Analysis**

On July 12, 2005, approximately eleven months after filing his complaint, Plaintiff filed a Motion to Compel Appraisal [Docket No. 32], citing Arizona Revised Statutes § 12-1502.[4]  Plaintiff seeks a Court order "compelling Defendant to

_____

[3] Defendant asserts that "the amount in controversy in the above entitled cause of action, exclusive of interest and costs, exceeds $75,000.00..."   Docket No. 1, Attach. (Defendant's Petition for Removal).   However, the dispute between Plaintiff and Defendant regarding the benefits due to Plaintiff under the insurance policy is approximately $51,000, some $24,000 less than the "amount in controversy" requirement for the Court to exercise diversity jurisdiction over this matter.

[4]

On application of a party showing an agreement described in § 12-1501, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration, but if the opposing party denies the existence of the agreement to arbitrate, the court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party. Otherwise, the application shall be denied.
B. On application, the court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party. If found for the opposing party, the court shall order the parties to proceed to arbitration.
C. If an issue referable to arbitration under the alleged agreement is involved in an action or proceeding pending in a court having jurisdiction to hear applications under

submit the valuation issue, that is, the dispute as to the amount of covered damages, to appraisal as required by the appraisal clause in the subject insurance policy." Id. Plaintiff argues that, because Arizona law favors enforcement of appraisal clauses in contracts, by way of analogy to arbitration clauses, the Court must order Defendant to fulfill this contractual obligation.

Defendant contends that Plaintiff waived his right to seek Defendant's specific performance of the contract clause regarding appraisal by filing a lawsuit alleging breach of contract and pursuing a claim against Defendant for compensatory and punitive damages.

### A. Substantive law

The Court has limited discretion when deciding a motion to compel appraisal. See Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218, 105 S. Ct. 1238, 1241 (1985); Weyerhaeuser Co. v. Western Seas Shipping Co., 743 F.2d 635, 637 (9th Cir. 1984); Palozie v. State Farm Mut. Auto. Ins. Co., 1996 WL 814533, at *3

---

subsection A of this section, the application shall be made therein.    Otherwise and subject to § 12-2101, the application may be made in any court of competent jurisdiction.
D. Any action or proceeding involving an issue subject to arbitration shall be stayed if an order for arbitration or an application therefor has been made under this section or, if the issue is severable, the stay may be with respect thereto only.  When the application is made in such action or proceeding, the order for arbitration shall include such stay.
E. An order for arbitration shall not be refused on the ground that the claim in issue lacks merit or bona fides or because any fault or grounds for the  claim sought to be arbitrated have not been shown.

Ariz. Rev. Stat. Ann. § 12-1502 (2003).

(D. Ariz.).  When exercising this discretion, the Court should consider whether the parties entered into a valid agreement to submit to appraisal, whether the assertion of a right to compel appraisal falls within the scope of the parties' agreement, and whether the party seeking appraisal has waived that right.  <u>Cf. Nicaragua v. Standard Fruit Co.</u>, 937 F.2d 469, 477 (9th Cir. 1991) (stating this test in the context of an arbitration agreement);[5] <u>Daisy Mfg. Co., Inc. v. NCR Corp.</u>, 29 F.3d 389, 392 & 395 (8th Cir. 1994).

Federal waiver doctrine is consistent with generally applicable state laws of waiver.  <u>See</u>, <u>e.g.</u>, <u>Van Ness Townhouses v. Mar Indus. Corp.</u>, 862 F.2d 754, 758 (9th 1999); <u>Hoffman Constr. Co. v. Active Erectors & Installers, Inc.</u>, 969 F.2d 796 (9th Cir. 1992).  Pursuant to Arizona law, waiver is demonstrated by an express, voluntary, and intentional relinquishment of a known right, or by "*conduct so inconsistent with an intent to assert the right that an intentional relinquishment can be inferred*."  <u>City of Cottonwood v. James L. Fann Contracting, Inc.</u>, 179 Ariz. 185, 189, 877 P.2d 284, 290 (Ct. App. 1994) (emphasis added).  A party waives its right to enforce an appraisal right by expressly waving the right; or by acquiescing in the other party's repudiation of the agreement to submit to an appraisal process; or by acting in a manner

---

[5] In an unpublished opinion, another judge of the Court has determined that contractual clauses agreeing to submit to an appraisal procedure are analogous to contractual clauses agreeing to submit to arbitration.  <u>See</u> <u>Palozie</u>, 1996 WL 814533, at *2 ("the Arizona Court of Appeals has determined that an insurance policy appraisal clause is analogous to arbitration and that arbitration law applies to disputes involving such clauses.").

inconsistent with submitting to or enforcing a requirement to submit to appraisal, including preventing an appraisal, disregarding an instigated appraisal, or unreasonably delaying any requested submission to an agreement for an appraisal. <u>Id.</u> 179 Ariz. at 190-91, 877 P.2d at 289-90.

> In <u>Bolo</u> [<u>Corporation v. Homes & Son Construction Co., Inc.</u>, 105 Ariz. 343, 464 P.2d 788 (1970)], a subcontractor refused the contractor's request to submit a dispute to arbitration. [] The contractor initially elected to file a lawsuit for breach of contract. [] Six months later, however, the contractor attempted to compel arbitration. [] The Arizona Supreme Court held that when the contractor chose to file suit against the subcontractor, the contractor acquiesced in the subcontractor's rejection of arbitration, thereby waiving its right to compel arbitration. []

<u>Id.</u>, 179 Ariz. at 190, 877 P.2d at 289 (internal citations omitted).[6]

A party seeking to establish another's waiver of the right to compel an appraisal bears the burden of establishing

---

[6]   The Arizona court compared <u>Bolo</u> with <u>EFC Development Corporation v. F.F. Baugh Plumbing & Heating</u>, 24 Ariz. App. 566, 540 P.2d 185 (1975):

> In <u>EFC</u>, the court held that proof of waiver requires showing conduct inconsistent with the arbitration remedy. 24 Ariz. App. at 569, 540 P.2d at 188. Inconsistency usually is found when one party engages in conduct preventing arbitration, proceeds at all times in disregard of arbitration, expressly agrees to waive arbitration, or unreasonably delays requesting arbitration. [] EFC moved to compel arbitration while simultaneously filing a complaint with the Registrar of Contractors seeking revocation of Baugh's license, and filing mechanics' an materialmen's liens. [] The court held that these actions were not inconsistent with utilization of the arbitration remedy and refused to imply waiver from EFC's simultaneous actions.

179 Ariz. at 190-91, 877 P.2d at 289-90 (internal citations omitted).

that waiver.  See Britton v. Co-op Banking Group, 916 F.2d 1405, 1412 (9th Cir. 1990).  In addition to establishing that Plaintiff, as the moving party, waived his right to compel appraisal, Defendant must also show that Defendant has been prejudiced by Plaintiff's act of relinquishment and then assertion of this right.  See City of Cottonwood, 179 Ariz. at 191, 877 P.2d at 290.  Prejudice includes time, expense, duplication of effort in separate forums, or advantage to the other party. Mitsui & Co. (USA) v. C & H Refinery, Inc., 492 F. Supp. 115, 118-20 (N.D. Cal. 1980).

The Arizona courts have determined that a defendant waives their right to compel performance of an appraisal clause in a contract when the defendant files an answer to a suit for breach of the contract, which answer fails to demand enforcement of the appraisal clause.  See Meineke v. Twin City Fire Ins. Co., 181 Ariz. 576, 581, 892 P.2d 1365, 1371 (Ct. App. 1995) (filing an answer "without invoking arbitration or appraisal would nearly always indicate a clear repudiation of the right to arbitrate or have an appraisal...").  Meineke is distinguishable from the instant case because, in Meineke, neither party invoked the appraisal clause prior to the suit.  Id., 181 Ariz. at 578-79, 892 P.2d at 1367-68.[7]  The Meineke opinion reasoned that

---

[7]  The Court notes that, in its Meineke decision, the Arizona court relied on an older Minnesota case, Anderson v. Twin City Rapid Transit, 250 Minn. 167, 84 N.W.2d 593 (Minn. 1957).  In Anderson, the court concluded that the plaintiff had repudiated their right to arbitrate by initiating a lawsuit and that the defendants acquiesced in the repudiation by answering the complaint without demanding appraisal.  Meineke, 181 Ariz. at 582, 892 P.2d at 1371.  The Meineke opinion does not explicitly endorse the outcome of Anderson, and the decision of a Minnesota court interpreting Minnesota law is not binding on this Court's determination of Arizona law.

allowing a defendant to invoke the appraisal clause anytime after it filed its answer "would leave the insured in limbo as to which procedure would prevail for settlement of their claim" and would nullify the time and expense-saving benefits of appraisal. Id.

Plaintiff's course of action is distinguishable from the plaintiff in Meineke and more analogous to the plaintiff in the unpublished decision in Palozie, 1996 WL 814533, at *5. In Palozie, wherein the defendant filed the motion to compel appraisal, the plaintiff invoked the appraisal clause prior to filing his lawsuit, and the parties were engaged in the appraisal process when the plaintiff filed suit. The defendant acknowledged in its answer that the plaintiff had invoked the appraisal clause. Id. Unlike the defendant in Meineke, the Palozie defendant's motion to compel appraisal was not its first request for appraisal. The defendant had not delayed in pursuing appraisal but had delayed only in seeking judicial intervention, albeit to assist it in pursuing appraisal.

Defendant has not established that Plaintiff, as the moving party, acted inconsistently with the remedy Plaintiff now seeks, i.e., to compel appraisal. See EFC Dev. Corp. v. F.F. Baugh Plumbing & Heating, 24 Ariz. App. 566, 569, 540 P.2d 185, 188 (1975).[8]  Additionally, Defendant has not proved that it was

---

[8]
    Appellee never refused arbitration, but rather, from the inception, actively and aggressively pressed its attempts to bring the matter to arbitration.  The basis of the finding of waiver of an arbitration provision is the showing of conduct inconsistent with utilization of the arbitration remedy--conduct showing an intent not to arbitrate.  Bolo Corporation, supra.  Inconsistency is

prejudiced by Plaintiff's acts in seeking to compel appraisal and filing suit seeking damages for Defendant's failure to abide by this contractual provision.  See City of Cottonwood, 877 P.2d at 290.  Defendant has not been subjected to unexpected expenditures of time, or duplication of effort in separate forums, or advantage to Plaintiff, by any act of Plaintiff.  Any delays in the appraisal process are of Defendant's own making and any expense Defendant has incurred in litigating this matter cannot be deemed prejudicial.  See Britton, 916 F.2d at 1413 (finding allegations of prejudice "unpersuasively conclusory" where non-moving party refused to arbitrate and pursued litigation); Lake Commc'ns, Inc. v. ICC Corp., 738 F.2d 1473, 1477 (9th Cir. 1984) (noting no prejudice where the progress of the litigation was limited); Mitsui & Co. (USA), 492 F. Supp. at 118-19 (stating that the point at which a party suffers prejudice in a lawsuit is where the pleadings are fully joined, considerable discovery has been conducted, and a date for a joint proposed pretrial order has been confirmed).

### Conclusion

The contract between the parties to this suit contains a clear contractual agreement regarding appraisal of the insured

---

usually found from such conduct as preventing arbitration, making arbitration impossible, proceeding at all times in disregard of the arbitration clause, expressly agreeing to waive arbitration, or unreasonable delay.  See Annots., 117 A.L.R. 301 (1938), 161 A.L.R. 1426 (1946).  In view of appellee's prior and subsequent conduct in continually pressing for arbitration, no waiver can be implied from the fact that it filed a complaint with the State Registrar of Contractors, seeking the revocation of appellant's contractor's license.

property to ascertain alleged damages.  Defendant has not met their burden of establishing that Plaintiff waived his right to invoke the appraisal clause by filing this suit, or by expressly waving the right, or by acquiescing in Defendant's repudiation of the agreement to submit to an appraisal process, or by acting in a manner inconsistent with submitting to or enforcing the appraisal clause.  Nor has Defendant demonstrated prejudice to Defendant by Plaintiff's invocation of this right.  Therefore, the motion to compel enforcement of the appraisal clause will be granted.

However, the appraisal clause states that Defendant shall be allowed to select an independent appraiser to represent Defendant.  Therefore, the Court will deny, at this time, Plaintiff's motion to appoint an appraiser to represent Defendant.

**THEREFORE, IT IS ORDERED THAT** Plaintiff's motion to compel appraisal [Docket No. 32] is **granted** in part and **denied** in part.  The motion is granted insofar as it seeks to compel Defendant to select an independent appraiser and to comply with the appraisal clause of the contract between the parties.  The motion is **denied**, at this time, insofar as it asks the Court to appoint an appraiser for Defendant.

**IT IS FURTHER ORDERED THAT** Defendant shall have ten days from the date that this order is filed to select and employ an appraiser and to  notify the Court and Plaintiff of the name and contact information for the appraiser selected by Defendant.

Any failure by Defendant to select and employ an appraiser within ten days from the date that this order is entered may result in the imposition of sanctions on Defendant for failure to abide by this Court's order and/or the court reconsidering Plaintiff's request for the Court to appoint an appraiser. The parties' appraisers shall forthwith select an umpire as provided in the appraisal clause and proceed with the appraisal process specified in the contract.

DATED this 13th day of October, 2005.


_____
Mark E. Aspey
United States Magistrate Judge